

DAVID E. RICE
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ANTONIO M. FLORES, | ) | Case No. 16-10108-DER |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| CHESAPEAKE EMPLOYERS | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary Pro. No. 16-00197-DER |
| | ) | |
| ANTONIO M. FLORES, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## <u>MEMORANDUM OPINION</u>

The court conducted a trial on the merits of this adversary proceeding on June 7 and 8, 2017.  The plaintiff, Chesapeake Employers Insurance Company ("CEIC"), introduced more than 100 exhibits into evidence and called nine witnesses to testify.  The defendant, Antonio M. Flores ("Flores"), offered no evidence and called no witnesses.  Following closing argument, the

court held this matter under advisement. After due deliberation and consideration of the evidence and the arguments of counsel, the court is prepared to rule on this matter.

In August of 2014, CEIC filed a complaint against Flores, Jennifer L. Bishoff ("Bishoff"), and others in the Circuit Court for Baltimore County, Maryland (the "Circuit Court").[1] On March 21, 2016, the Circuit Court granted CEIC's motion for summary judgment against Bishoff. As a result, the Circuit Court entered judgment in favor of CEIC and against Bishoff and Citywide in the amount of $338,776.[2]

CEIC filed a seven count complaint in this court against Flores in which CEIC asserts that Flores is liable to CEIC for the amount of that judgment plus punitive damages of $500,000 and also that his liability to CEIC is excepted from discharge under 11 U.S.C. § 523(a)(2). Count I of the complaint seeks a declaratory judgment that Flores and Bishoff agreed to operate a roofing and home improvement business as a partnership and that Flores is thus liable for the debts of that business. Counts II and III seek a determination under 11 U.S.C. § 523(a)(2)(A) that the alleged partnership's liabilities to CEIC are not dischargeable by reason of misrepresentation or fraudulent concealment, either by imputation of Bishoff's wrongful actions to Flores as a matter of partnership law, or by reason of the direct individual actions of Flores. Similarly, Count IV seeks a determination under 11 U.S.C. § 523(a)(2)(B) that such liabilities are not dischargeable by reason of use of a false written statement by imputation or by the direct individual actions of Flores. Counts V, VI, and VII seek a determination of nondischargeability on grounds parallel to Counts II, III, and IV, but based upon the assertion that the liability of Flores to CEIC stems from his participation with Bishoff in a civil conspiracy to defraud CEIC.

---

[1] *Chesapeake Employers Insurance Company v. Jennifer Bishoff, et al.*, Case No. 03-C-14-009121.
[2] Prior to entry of judgment by the Circuit Court, Flores filed a voluntary Chapter 7 bankruptcy petition in this court. Thus, the Circuit Court litigation was automatically stayed as to Flores pursuant to 11 U.S.C. § 362 at the time the judgment was entered.

For the reasons that follow, the court concludes that (i) the business in question was not a partnership (either in fact or by estoppel), but was a sole proprietorship owned by Bishoff, (ii) Flores is not liable to CEIC by reason of any of his individual actions,[3] and (iii) Flores was not a participant in a civil conspiracy.  Thus, the relief sought by the plaintiff must be denied.

## JURISDICTION

The court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I).  This memorandum opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rule 7052 of the Federal Rules of Bankruptcy Procedure).[4]

## FINDINGS OF FACT

Bishoff formed a roofing and home improvement business in 2008 that traded as Citywide Construction, Citywide Home Improvement, and/or other similar names (collectively, "Citywide").  On or about September 4, 2008, Bishoff submitted an application for workers' compensation insurance to CEIC.[5]  The application was submitted through an insurance agent known as Rick Gerety & Associates, Inc. ("Gerety").  The application is signed solely by Bishoff.  Effective as of September 4, 2008, CEIC issued a Workers' Compensation and

---

[3]  Because the court has determined that the business was not a partnership, the alternative grounds in Counts II, III, and IV based upon imputation of nondischargeable liability to Flores under the combined effect of partnership and bankruptcy law are without merit and are not a basis for a determination of nondischargeability.

[4]  To the extent any finding of fact may constitute a conclusion of law, it is adopted as such.  To the extent any conclusion of law may constitute a finding of fact, it is adopted as such.

[5]  At the time, CEIC was known as the Injured Workers Insurance Fund (commonly known as "IWIF"), an independent unit of the government of the State of Maryland.  Effective October 1, 2013, CEIC became the successor in interest of IWIF in accordance with Maryland Code Annotated, Insurance Article § 24-301, *et seq.*  Because the difference between CEIC and IWIF is not material for purposes of this opinion, the plaintiff is referred to throughout this memorandum opinion as CEIC.

Employers' Liability Insurance Policy to Bishoff.  CEIC's policy and Bishoff's application both referred to Bishoff as a "sole proprietor."

In July of 2009, CEIC sent Gerety renewal papers for the policy that indicated that Bishoff was the insured and that she was the "owner."  The policy issued by CEIC effective September 4, 2009 indicated that Bishoff was a "sole proprietor."  In July of 2010, CEIC again sent policy renewal papers to Gerety.  In this instance, those papers indicated that the insured was Bishoff, that she was the "owner," and that she was trading as "City Wide Construction." The policy issued effective September 4, 2010 again indicated that Bishoff was a "sole proprietor."  Thereafter, CEIC issued policy renewals to Bishoff effective September 4, 2011, September 4, 2012, and September 4, 2013.  In each instance, the policies indicated that Bishoff was a "sole proprietor."  Eventually, CEIC cancelled the policy for nonpayment of premiums effective as of October 31, 2013.  The Cancellation Notice was addressed to Bishoff as the "policyholder."

Under the terms of the policies issued by CEIC to Bishoff, the premiums to be paid were based upon a rate applied to the premium basis.  The premium basis was determined by calculation of the total remuneration paid by Bishoff for all labor by employees in various classifications.  Thus, following each policy year CEIC was entitled to audit Bishoff's records to determine the amount of all such remuneration that should be included as part of the premium basis.  Bishoff's recordkeeping was haphazard at best and she apparently had little understanding that for purposes of the CEIC policies remuneration included not just employees issued payroll checks, but also subcontractors and day laborers paid in cash.  CEIC's audits eventually determined that Bishoff had substantially underreported payments to subcontractors and cash

payments to day laborers.  As a result, it is undisputed that Bishoff owes CEIC at least $338,766 in unpaid premiums as stated in CEIC's premium invoice dated April 16, 2014.

All aspects of obtaining and renewing the insurance provided by CEIC were handled by either Bishoff or Lisa Barkhorn ("Barkhorn"), a friend of Bishoff who provided bookkeeping and administrative assistance.  Flores signed none of the documents submitted by Citywide to CEIC. Flores made no oral statements to CEIC in connection with obtaining or renewing insurance for Citywide.  No evidence was presented that indicates CEIC issued or renewed insurance for Citywide in reliance on the assertion now made that Citywide was a partnership rather than a sole proprietorship, and that Flores was one of the partners in such a partnership.

No written partnership agreement was introduced into evidence.  Nothing in the evidence presented suggests that Bishoff and Flores entered into a written partnership agreement with respect to the Citywide business.  Likewise, no direct evidence was presented of any such oral partnership agreement.  Thus, CEIC relies upon the totality of the facts and circumstances as a basis upon which the court could infer the existence of an oral partnership agreement or of a partnership by estoppel.

Flores was and is married to Bishoff.  According to both Bishoff and Flores, their marriage relationship deteriorated as the financial problems of Citywide worsened.  As a result they separated in November of 2014.  Prior to formation of Citywide in 2008, Bishoff had no experience in the roofing or home repair business, and had never owned or operated a business. Bishoff previously worked for approximately 10 years as a substance abuse counselor.  After her daughter was born in 2005, Bishoff decided to start a business so she could work from home.

Bishoff operated Citywide out of an office at the residence Flores shared with her.  Flores managed field operations on a day to day basis and acted as a job foreman.  In that role, Flores

was responsible for identifying the workers (including the day laborers who were paid in cash) to be utilized on any given project. The bulk of the work done by Citywide was as a subcontractor for other local roofing businesses. The bank account used for Citywide's business was controlled by Bishoff and she was the sole authorized signatory for checks drawn on that account. The Commercial Account Application indicates that the Citywide bank account was opened on September 2, 2008 (just prior to when the initial application for insurance was submitted to CEIC) and that the business was a sole proprietorship owned by Bishoff. To the extent Flores handled the money used in the business, it was to collect general contractor payments, make bank deposits, occasionally cash checks, and deliver cash payments to day laborers, all at the direction of Bishoff.

Consistent with the unconventional business practices at Citywide, Flores was paid in a haphazard fashion. Bishoff deposited the Citywide receipts into the bank account she controlled and from which she paid Citywide as well as household expenses. Flores was variously paid in cash or by check as the business cash flow permitted. By reason of his employment in a business operated by his spouse, Flores was naturally inclined to assist Bishoff by deferring payment of his compensation. Nothing in the record, however, demonstrates that he agreed with Bishoff to share the profits of Citywide in some fashion. To be sure, his compensation was dependent as a practical matter on the cash flow or financial success for Citywide; I do not infer from that circumstance, however, that Bishoff had agreed to share with him the profits such as they may have been of Citywide.

Bishoff and Flores filed joint income tax returns. In connection with CEIC's audits, Bishoff provided CEIC copies of the Schedule C Profit or Loss From Business (Sole Proprietorship) that accompanied their joint Form 1040 U.S. Individual Tax Return for the tax

years 2010, 2011 and 2012.  In each instance Schedule C identified Bishoff as the proprietor and the nature of her business as either roofing or roofing contractor.  Copies of Schedule C for the joint returns for tax years 2008 and 2009 were also introduced into evidence and both indicate that Bishoff was the proprietor of a sole proprietorship engaged in the construction or home improvement business under the name Citywide Construction.

Flores was well known in the roofing business in the Baltimore area.  He began doing roofing work at the age of 18 and by the time Citywide went into business had many years of experience as a roofer and as a foreman for roofing crews.  Prior to going to work for Citywide, Flores had never owned or operated a roofing business.  Flores had been previously convicted on drug related criminal charges and served time in jail and both Bishoff and Flores acknowledged their belief that his criminal record might make it difficult for Flores to obtain a license from the Maryland Home Improvement Commission (or at least to obtain one without inordinate delay).  In any event, the MHIC license under which Citywide operated was issued to Bishoff.

CEIC called three witnesses, Brian T. Grant ("Grant"), Timothy G. Taylor ("Taylor"), and Christopher Toleman ("Toleman"), in an effort to provide independent corroboration for its assertion that Flores held himself out, and was understood in the industry, to be the owner of or a partner in Citywide.  That effort was not particularly convincing and tended to support a conclusion opposite to the one intended by CEIC.  I find that their collective testimony establishes only that Flores was an active manager of the field operations for Citywide who interacted on a daily basis with general contractors dealing with Citywide.

Grant is, and since January of 2008 has been, the managing member of a roofing business known as Brian's Roof Repair LLC ("BRR").  Beginning in 2008, Grant contracted on behalf of BRR with Citywide primarily for labor on roof replacement projects.  Grant was referred initially

to Flores by a third party. According to Grant, Flores was the person who handled the onsite supervision of work done by Citywide for BRR. In the beginning, Grant assumed that Flores was running and in control of Citywide. On the witness stand, however, Grant acknowledged that was a sexist assumption. On cross-examination, Grant admitted that he had no personal knowledge about who was the owner of the Citywide business. Moreover, Grant did not testify that Flores signed any contracts on behalf of Citywide or that Flores ever stated that he was an owner of or partner in Citywide.

Taylor is, and since 2004 has been, the owner of a roofing business known as Roofpro LLC ("Roofpro"). Citywide performed work as a roofing subcontractor for Roofpro from 2008 through 2011. According to Taylor, Flores was the primary point of contact with whom Roofpro dealt for Citywide subcontracts and Flores was the one overseeing the work performed by Citywide crews. Although Taylor stated that Flores signed contracts with Roofpro on behalf of Citywide, no copy of any such contract was introduced into evidence at trial. On direct, Taylor stated that it was his opinion that Flores was the one who was running Citywide. On cross-examination, Taylor admitted that he knew that Bishoff's name was on Citywide's insurance certification provided to Roofpro, that he knew Bishoff's name was on the MHIC license for Citywide, and that it could be assumed (although he was uncertain) that Citywide was Bishoff's business. Taylor did not testify that Flores ever stated that he was an owner of or partner in Citywide.

Toleman is, and was at the relevant times, the owner and "top manager" of a roofing business known as Arocon Roofing & Construction LLC ("Arocon"). Beginning in 2009, Arocon contracted with Citywide primarily for labor on roof replacement projects. According to Toleman, Flores was the person responsible for onsite supervision of work done by Citywide for

Arocon.  Although Toleman stated that Citywide would have entered into a sub-contractor contract with Arocon and that he believes that contract would have been signed by Flores, no copy of any such contract was admitted (or offered) as evidence at trial.  Toleman acknowledged that Arocon was in possession of a copy of the MHIC license for Citywide issued in the name of Bishoff.  On direct examination, Toleman stated that he assumed that Flores was the owner of Citywide.  On cross-examination, however, Toleman acknowledged that (i) he had no knowledge of who owned Citywide, (ii) at the time he was dealing with Citywide, he was not particularly interested in and gave little thought to the question of ownership of Citywide, and (iii) at that time he could have assumed Citywide was owned by Bishoff had he given the matter consideration.  Like Grant and Taylor, Toleman did not testify that Flores ever stated that he was an owner of or a partner in Citywide.

CEIC also relied on its Exhibit 36 as evidence that Flores was an owner of or a partner in Citywide.  The court finds that Exhibit 36 should be given no weight for this proposition.  At the end of each policy year, CEIC sent Bishoff a letter requesting information for use in determining the actual (as opposed to the initially estimated) premium for a given policy year.  CEIC sent such a letter to Bishoff dated September 4, 2013 requesting that she complete and return the attached Premium Audit Report form by September 25, 2013.  Bishoff apparently did not comply because CEIC sent her three additional such letters dated September 25, November 4, and November 25, 2013.  In the meantime, CEIC had terminated the policy for nonpayment effective as of October 31, 2013.  Exhibit 36 is a single-page, unsigned document that appears to be the first page of the Premium Audit Report form that accompanied CEIC's first letter dated September 4, 2013.

Barkhorn testified her handwriting appears on Exhibit 36, which indicates that Flores was an "owner/manager" and that his duties were "roofing/supervisor."  According to Barkhorn, she filled out Exhibit 36 at Bishoff's request based upon information provided to her by Bishoff. Barkhorn testified that she simply completed Exhibit 36 as instructed by Bishoff and submitted it to CEIC.  It is unclear from the record when Exhibit 36 was transmitted to CEIC, but it was certainly after CEIC's September 4, 2013 letter requesting the Premium Audit Report.  Whatever the intention behind Exhibit 36, Flores was not involved in its creation.  Flores did not sign Exhibit 36.  There is no evidence that Flores provided any of the information contained in Exhibit 36, or that he authorized anyone to communicate that information (whatever its meaning) to CEIC.  Furthermore, CEIC offered no evidence to show that it ever relied on Exhibit 36 in connection with determining whether to issue workers' compensation insurance coverage to Bishoff for Citywide.

CEIC also called David Spear ("Spear") as a witness.  Spear is a Senior Investigator in CEIC's Special Investigation Unit.  He was responsible for various audit matters related to the CEIC policy issued to Citywide, including the estimated audit for the policy term ending September 4, 2013.  Spear acknowledged that he did not deal with Flores on the audits, that Flores had no direct contact with CEIC, and that Flores never represented to CEIC that he was an owner of the Citywide business.

The audits conducted by CEIC for the policy terms ending September 4, 2011 and September 4, 2012 determined that additional premiums of $91,755 were due.  As a result, Bishoff executed a promissory note dated October 11, 2012 payable to CEIC in that amount. The signature block for Bishoff on the note indicated that she was doing business as Citywide. Flores did not sign the promissory note.  While the note may not be entirely dispositive as to the

issues before the court, it is certainly indicative of the fact that CEIC did not believe at the time it was executed that Citywide was a partnership or that Flores was liable to CEIC for Citywide debts.  It is only after the policy was terminated for nonpayment and collection action was undertaken that CEIC began to take the position that Flores was liable to CEIC for the remaining $338,776 in unpaid premiums by reason of its argument that Citywide was a partnership with Bishoff.[6]

## CONCLUSIONS OF LAW

The exceptions to discharge specified by Congress in § 523 of the Bankruptcy Code are to be construed narrowly.  As the Fourth Circuit has repeatedly made clear, "[w]hen considering the applicability of an exception to discharge, [a court must] construe the exception narrowly 'to protect the purpose of providing debtors a fresh start.'"  *Nunnery v. Rountree (In re Rountree),* 478 F.3d 215, 219 (4th Cir. 2007) (quoting *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)).  The Supreme Court has long cautioned against broad constructions of exceptions to discharge because they "would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'"  *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).  *See also*, *Bullock v. BankChampaign*, 569 U.S. 267, 268, 133 S.Ct. 1754, 1760 (2013).

Conversely, this court must be "equally concerned with ensuring that perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code."  *Biondo*, 180 F.3d at 130.  As the Supreme Court has indicated, while the Bankruptcy Code provides a debtor with "'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt,'" the Bankruptcy Code also "limits that opportunity to the

---

[6]  The liability of $338,776 is comprised of $16,275 remaining unpaid on the promissory note, $295,360 in unpaid premiums due for the policy term ending September 4, 2013, and $27,141 in unpaid premiums due for the policy term ending as of the October 31, 2013 termination.

'honest but unfortunate debtor.'" *Brown v. Felsen*, 442 U.S. 127, 128 (1979) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

The burden of proof is on the creditor to establish by a preponderance of the evidence that a debt is not dischargeable. *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)); *Colombo Bank v. Sharp*, 477 B.R. 613, 619 (D. Md. 2008). Although the allowance of a claim is generally governed by state law, "the issue of non-dischargeability is a matter of federal law governed by the Bankruptcy Code." *Ortman v. Reinheimer (In re Reinheimer)*, 509 B.R. 12, 18 (Bankr. D. Md. 2014).

With these general principles in mind, I turn to consideration of whether CEIC is the holder of a claim against Flores that is excepted from discharge (that is, nondischargeable) under 11 U.S.C. § 523(a)(2).

***Count I:  Partnership.***

The question of whether Citywide was a partnership is a matter of Maryland law. The existence of a written agreement is not a prerequisite under Maryland law for the creation of a partnership. As the Court of Appeals of Maryland has said,

> Although [the plaintiff] relies upon an oral agreement to establish the partnership, a written agreement is not necessary where the acts and circumstances of the parties indicate an intention to create a partnership. Similarly, where there is no express agreement, whether or not a partnership exists is to be gathered from the intention of the parties revealed by their conduct and the circumstances surrounding their relationship and the transactions between them.

*Presutti v. Presutti*, 270 Md. 193, 197-98 (1973) (citations omitted). See also, *Gosman v. Gosman*, 271 Md. 514, 519 (1974) ("There was, of course no written agreement, and none is required 'where the circumstances and acts of the parties indicate an intention to create a

partnership.'") (quoting *M. Lit., Inc. v. Berger*, 225 Md. 241, 248 (1961)).  In *Berger*, the court

reiterated the longstanding Maryland rule that the "burden of proving a partnership is on the one

who alleges its existence."  225 Md. at 247 (citing *Collier v. Collier*, 182 Md. 82 (1943)).  These

well-settled propositions were summarized and explained at length as follows in an earlier Court

of Appeals of Maryland decision cited in *Presutti*:

> The applicable law is clear and well established.  The existence of
> a partnership will not be presumed, but must be proved … with the
> burden of proving such existence resting upon the party having the
> affirmative of that issue.  Between the parties, the existence of a
> partnership, *vel non*, is a matter of the parties' intention proved by
> their expressed agreement, or inferred from their acts and conduct.
> And this intention is to be determined as it is disclosed by all of the
> transactions between the parties.  The receipt by a person of a
> share of the profits of a partnership business (with certain
> exceptions noted [in what is now Md. Code Ann., Corps. & Ass'ns
> § 9A-202(d)]) is prima facie evidence that he is a partner in the
> business.  The probative force of the sharing of profits is not
> conclusive on the question of the existence of a partnership, but
> may be rebutted by a showing of fact to the contrary.

*Miller v. Salabes*, 225 Md. 53, 55-56 (1961) (citations omitted).

Applying these principles of partnership law to the evidence presented at trial, I conclude

that CEIC did not meet its burden to establish by a preponderance of the evidence that the

Citywide business was in fact a partnership between Flores and Bishoff.  There was no written

partnership agreement for Citywide.  There was no direct evidence presented at trial of any oral

agreement between Bishoff and Flores to operate Citywide as a partnership.  That being the case,

CEIC relies by necessity on the contention that the court can infer the existence of an oral

agreement from the totality of the circumstances, particularly because CEIC contends that Flores

received a share of the profits from Citywide.  I conclude such an inference is not supported by

the preponderance of the evidence presented at trial.

The only evidence that suggests Flores was an owner of Citywide is CEIC's Exhibit 36, which (as indicated above) the court concludes should be given no weight. All other evidence demonstrates that Citywide was a sole proprietorship owned by Bishoff. I recognize that CEIC contends that Flores should be presumed to be a partner in Citywide under § 9A-202(d)(3) of the Maryland Revised Uniform Partnership Act by reason of its contention that he received a share of the profits. I conclude from the evidence presented, however, that Flores was not receiving a share of the profits; the profits belonged to Bishoff and whatever was received by Flores was paid to him as compensation for his services as the manager of Citywide's field operations.

The fact that Bishoff may have used her Citywide bank account to pay business and household expenses that benefited Flores does not dictate a different conclusion. Flores was Bishoff's spouse and application of her profits to their common expenses does not constitute an agreement to share the profits of Citywide; to hold otherwise would be tantamount to holding that an individual is effectively automatically exposed to liability as a partner in a spouse's sole proprietorship business simply by reason of the fact of marriage. Agreeing to be one's partner for personal matters and necessities of cohabitation should not automatically carry over into one's business matters by default for good reason, as many laws protecting innocent spouses have sought to make clear. In any event, I find that the facts do not warrant such a conclusion in this case.

The determination that Citywide was not a partnership in fact does not dispose entirely of the question of the liability, if any, of Flores to CEIC under partnership law. It has long been the law in Maryland that liability to third parties may arise by reason of partnership by estoppel. As the Court of Appeals of Maryland has observed,

> That there may be a partnership by estoppel as to third persons,
> even though the parties are not partners *inter se*, is well recognized

> by our cases. … Under these cases, the ground of liability of a
> person as a partner, who is not so in fact, is that he has held
> himself out to the world as such, or has permitted others to do so
> and, by reason thereof, is estopped from denying that he is a
> partner as against those who have, in good faith, dealt with the firm
> or with him as a member of it.

*Klein v. Weiss*, 284 Md. 36, 67 (1978) (citations omitted).  In this regard, the Maryland Revised

Uniform Partnership Act provides in pertinent part as follows:

> If a person, by words or conduct, purports to be a partner, or
> consents to being represented by another as a partner, in a
> partnership or with one or more persons not partners, *the purported
> partner is liable to a person to whom the representation is made, if
> that person, relying on the representation, enters into a transaction
> with the actual or purported partnership.*  If the representation,
> either by the purported partner or by a person with the purported
> partner's consent, is made in a public manner, the purported
> partner is liable to a person who relies upon the purported
> partnership even if the purported partner is not aware of being held
> out as a partner to the claimant.  If partnership liability results, the
> purported partner is liable with respect to that liability as if the
> purported partner were a partner.  If no partnership liability results,
> the purported partner is liable with respect to that liability jointly
> and severally with any other person consenting to the
> representation.

Md. Code Ann., Corps. & Ass'ns § 9A-308(a) (emphasis added).

Under these authorities, the essence of CEIC's assertion of liability against Flores would

be that (i) a representation was made to CEIC that Flores was a partner in Citywide, and (ii)

CEIC relied upon that representation at the time that it issued or renewed the insurance policy for

Citywide.  The evidence presented to the court does not establish that a representation was ever

made to CEIC that Flores was a partner in Citywide.  More importantly, nothing in the record

indicates that CEIC relied on any such representation at the time it issued or renewed the

Citywide policy.  That being the case, Flores is not liable to CEIC under the theory of

partnership by estoppel.

***Counts II and III: Misrepresentation and Concealment under 11 U.S.C. § 523(a)(2)(A).***

A discharge granted in a Chapter 7 case "does not discharge an individual debtor from any debt … for money, property, or services, or an extension, renewal, or refinancing of credit, to the extent obtained, by … false pretenses, a false representation, or actual fraud …." 11 U.S.C. § 523(a)(2)(A).  As the Fourth Circuit has explained, a creditor asserting a claim under § 523(a)(2)(A) must prove five elements by a preponderance of the evidence – namely, "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *Nunnery v. Rountree*, 478 F.3d at 218.  These five elements are essentially the same as those required under Maryland law to establish the tort of intentional misrepresentation (also known as fraud or deceit). *Philip v. Reecher (In re Reecher)*, 514 B.R. 136, 155 (Bankr. D. Md. 2014).  Although the Fourth Circuit has yet to address the question, a debtor's silence with respect to a material fact may give rise to a tort claim under Maryland law for concealment and nondisclosure that is not dischargeable under § 523(a)(2)(A).  *Philip v. Reecher*, 514 B.R. at 157.  As indicated by the Fourth Circuit in *Nunnery v. Rountree*, "Congress intended § 523(a)(2) to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means."  478 F.3d at 219-20.

As discussed above, however, there was simply no evidence of any representation to—let alone one relied on by—CEIC that Flores was a partner, through silence or otherwise.  Indeed, the evidence showed CEIC had no contact with Flores at all regarding whether to give Citywide insurance.  Accordingly, Flores is not liable to CEIC on the grounds of misrepresentation or concealment under 11 U.S.C. § 523(a)(2)(A).

***Count IV: Use of False Written Statement under 11 U.S.C. § 523(a)(2)(B).***

A discharge granted in a Chapter 7 case also "does not discharge an individual debtor from any debt … for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by … use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."  11 U.S.C. § 523(a)(2)(B).   As this court has previously explained,

> In order to sustain an action under Section 523(a)(2)(B) of the Bankruptcy Code, a plaintiff must show that: (1) the defendant made a written statement; (2) the written statement was about her financial condition; (3) the statement was materially false; and (4) the defendant published the statement with the intent to deceive the plaintiff; and (5) the plaintiff reasonably relied on the false statement.  The intent to deceive may be inferred by the totality of the circumstances, including a debtor's knowing or reckless disregard for the accuracy of financial statements.   A written statement is materially false if it paints a substantially untruthful picture of the defendant's financial condition by misrepresenting information of the type that would normally affect a plaintiff's decision to grant credit.  Mere inaccuracy is not sufficient, rather, material falsity requires a significant understatement of liabilities or exaggeration of assets.

*Guaranty Residential Lending v. Koep (In re Koep)*, 334 B.R. 364, 372-73 (Bankr. D.Md. 2005) (citations omitted).  Because § 523(a)(2)(B) is written in the conjunctive, a plaintiff must prove each element in order to prevail and failure to prove any one of them means that a court must find that the debt in question is subject to discharge.

As this court has also previously pointed out, "with respect to the first element, the statement must have been either written by the debtor, signed by the debtor, or written by

someone else and then adopted and used by the debtor." *Jones v. Owens (In re Owens)*, 549 B.R. 337, 349 (Bankr. D.Md. 2016). *See also, Hudson Valley Water Res. Inc. v. Boice (In re Boice)*, 149 B.R. 40, 45 (Bankr. S.D.N.Y. 1992) ("It is sufficient that Debtors either wrote, signed, or adopted such statement to find that documents were 'written' by them."). CEIC has not proved by a preponderance of the evidence that Flores used a written statement and thus its claim under § 523(a)(2)(B) must be denied.

The written statements relied upon by CEIC are the various insurance applications and premium audit reports submitted to CEIC in connection with the policy issued to and renewed for Citywide. Those documents were prepared and signed by Bishoff and/or Barkhorn. Although Bishoff and/or Barkhorn also submitted numerous supporting documents to CEIC at its request to substantiate matters relevant to the premium audit reports, none of them were written, signed, or adopted by Flores.[7] More importantly, Flores simply did not use any of the documents provided to CEIC to obtain insurance for Citywide from CEIC; the evidence makes abundantly clear that Flores did not interact with CEIC and that Bishoff and/or Barkhorn handled all interactions with CEIC with respect to the Citywide policy.

*Counts V, VI and VII: Conspiracy.*

Under Maryland law, liability for civil conspiracy requires a finding of "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Rosen v. Kore Holdings, Inc. (In re Rood)*, 459 B.R. 581, 603 (Bankr. D. Md. 2011) (citing *Hoffman v. Stamper*, 385 Md. 1,

---

[7] Among the documents submitted to CEIC were unsigned copies of various tax returns filed by Flores and Bishoff jointly with the Internal Revenue Service. Even if documents such as these were signed when submitted to CEIC, they would not be written statements used by Flores within the meaning of § 523(a)(2)(B) because they were used not by Flores, but by Bishoff and/or Barkhorn to obtain insurance for Citywide.

24 (2005)).  Numerous courts have found debts arising on account of a civil conspiracy to be nondischargeable where the underlying unlawful act was nondischargeable.  *See, e.g., Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 350 (5th Cir. 2017) ("the intent and actions of [the debtor's] co-conspirators is sufficient to support nondischargeability under § 523(a)(4)"); *Aetna Casualty and Surety Co. v. Markarian (In re Markarian)*, 228 B.R. 34 (B.A.P. 1st Cir. 1998) (affirming bankruptcy court's decision that all debts related to jury finding against the debtor for common-law fraud, statutory fraud and conspiracy were nondischargeable pursuant to §523(a)); *FDIC v. Smith (In re Smith)*, 160 B.R. 549 (N.D. Tex. 1993) (holding debt for conspiracy nondischargeable under § 523(a)(6) even though his conduct was not an independent, recognized tort but his actions were willful and malicious); *MacDonald v. Buck (In re Buck)*, 75 B.R. 417, 420-421 (Bankr. N.D. Cal. 1987) ("a debtor who has made no false representation may nevertheless be bound by the fraud of another if a debtor is a knowing and active participant in the scheme to defraud").

Civil conspiracy is not a tort that under Maryland law can support an award of damages absent other tortious injury to the plaintiff, which injury must result from the commission of an overt act in furtherance of the conspiracy.  *Hoffman v. Stamper*, 385 Md. at 25.  For purposes of this decision the court assumes (without deciding) that CEIC sustained actual injury by reason of the overt tortious actions of Bishoff and that her conduct was such that CEIC's claims against Bishoff would be nondischargeable under § 523(a)(2)(A) and/or § 523(a)(2)(B) for misrepresentation, concealment, fraud, and use of false written statements of financial condition.

The question before this court is thus whether Flores was a knowing and active participant in Bishoff's alleged scheme to defraud CEIC; that is, was Flores a party to an agreement (express or implied) with Bishoff to defraud CEIC.  The evidence shows he was not.

Flores was the manager of Citywide's day to day field operations. Bishoff was the owner of Citywide and was the person responsible for management of the business. In that role, Bishoff (with assistance from Barkhorn) handled all matters involving obtaining and maintaining the workers' compensation insurance policy issued by CEIC to Citywide. No evidence was presented of any actual written or oral agreement between Bishoff and Flores to defraud CEIC by presenting false information; nor does the court infer the existence of such an agreement from the evidence. It is true, of course, that Flores was Bishoff's spouse. That fact alone, however, does not warrant the inference of a conspiratorial agreement. Flores had no contact with CEIC. He responded to requests for information from Bishoff and Barkhorn. Those requests were not ones that asked him to supply false information and nothing indicates that Flores knowingly gave false information to Bishoff or Barkhorn with the intent that it be passed on to and relied upon by CEIC. Bishoff and Barkhorn simply lacked the business acumen necessary to run a business like Citywide. Flores may be an experienced roofer and an excellent manager of roofing crews in the field, but he likewise lacked the business acumen needed to run a roofing business. Collective incompetence is simply not a basis for inferring conspiracy—especially when questions about the nondischargeability of alleged debts are to be liberally construed in favor of debtors.

## Conclusion

For the above reasons, the court will enter a separate order that denies with prejudice all relief sought in CEIC's complaint.


cc:    Joseph A. Pulver, Esq.
       Shapiro Sher Guinot & Sandler
       250 West Pratt Street, Suite 2000
       Baltimore, Maryland 21201
       *Attorney for Plaintiff, Chesapeake Employers Insurance Company*

Robert M. Stahl, IV, Esq.
Law Offices of Robert M. Stahl, LLC
1142 York Road
Lutherville, Maryland 21093
*Attorney for Defendant, Antonio M. Flores*

## -- END OF MEMORANDUM OPINION --